THOMAS LIPINSKI *v.* TOWN OF CHESTERTON.

[No. 170A6.  Filed February 8, 1972.  Rehearing denied
March 27, 1972, with opinion.]

*George Cohan, Sheldon H. Cohan,* of Gary, for appellant.

*William W. Anderson,* of Chesterton, for appellee.

SHARP, J.—This case is now decided on its merits pursuant
to the mandate of our Supreme Court in *Thomas Lipinski* v.
*Town of Chesterton,* 256 Ind. 539, 270 N. E. 2d 738 (1971)
which overruled the earlier dismissal of this appeal by this
Court in *Thomas Lipinski* v. *Town of Chesterton,* 256 Ind.
App. 539, 256 N. E. 2d 580 (1970).

The Appellant's complaint was filed in the trial court on March 10, 1969 and contains the following essential allegations:

"That the Defendant TOWN OF CHESTERTON has appointed a Board of Metropolitan Police Commissioners consisting of three members appointed by the Board of Trustees of the Town of Chesterton, which said Board of Police Commissioners has the duty of appointing, discharging and otherwise managing the Police Department of the Town of Chesterton.

"That on or about the 16th day of January, 1968, the Board of Police Commissioners adopted certain rules and regulations for the Chesterton Police Department and published the same in the form of a booklet containing some thirteen pages outlining the rules and regulations to govern the conduct of Police Officers of the Town of Chesterton as well as the procedure for the disciplining and discharge of such Police Officers.

"That the Plaintiff in this cause of action THOMAS LIPINSKI was on the 11th day of February, 1969, a Police Officer of the Town of Chesterton, having been appointed as such in the month of April, 1967 and having served continuously as a Police Officer of the Town of Chesterton from the time of his appointment until on or about February 11, 1969.

"That during the first two weeks of February, 1969 the Plaintiff THOMAS LIPINSKI was attending a Police School run by the Police Department of the City of Gary, Indiana under instructions from his superiors in the Chesterton Police Department and upon returning to the town of Chesterton in the afternoon of February 11, 1969, was advised by the Chief of Police of the Town of Chesterton that he should hold himself ready to attend a meeting of the Board of Police Commissioners of the Town of Chesterton to be held later that evening.

"That on the evening of February 11, 1969, at approximately 11:00 P.M. the Plaintiff herein was orally summoned to the Police Station in the Town of Chesterton and upon his arrival there, found that there was a meeting of the Police Commissioners of the Town of Chesterton and that the persons present were Commissioner Paul Hathaway and Commissioner Chester Miller and the Police Chief James Piper and the Town Attorney, Mr. William W. Anderson, Jr.

"That at the meeting of February 11, 1969, there were other officers present aside from this Plaintiff and said meeting lasted until the early morning hours of February 12, 1969, and having once appeared before the Commissioners and Police Chief and the Town Attorney in the early morning hours of February 12, 1969, Plaintiff was once again called into the meeting and advised that because of his alleged improper conduct as a member of the Chesterton Police Department he had the choice of being summarily fired and discharged as a Chesterton Policeman which said discharge would take place immediately or in the alternative the Plaintiff was informed by the Police Commissioners and the Town Attorney that if he would sign a resignation he would be given a favorable recommendation to enable him to obtain other employment on another Police Department. Plaintiff was further informed that if he refused to sign a resignation that he would be given an unfavorable recommendation and would probably be unable to obtain other employment or obtain a favorable reference from the Town of Chesterton.

"That the Plaintiff who appeared at said meeting without counsel and without knowing what, if any, purpose was to be served by his attending said meeting did in the early morning hours of February 12, 1969, sign a purported resignation under the duress and influence as described herein.

"That the action of the Defendant acting by and through its Board of Police Commissioners and the Town Attorney on the basis of alleged grievances against the Plaintiff on account of his conduct as a Police Officer for the Town of Chesterton and after the Plaintiff had appeared at the meeting of the Board of Commissioners as ordered by his Chief, he was subjected to an examination into his conduct as a Police Officer for the Town of Chesterton and advised by the Board of Police Commissioners and the Town Attorney for the Town of Chesterton that he was thereupon fired on account of his conduct as a Police Officer with the stipulation that if Plaintiff would sign a resignation, the Police Commissioners of the Town of Chesterton would give him a good recommendation to enable him to obtain a job on another Police Department but that if he would not sign such a resignation, he might consider himself immediately suspended and fired and that he would get no favorable recommendation from the Town of Chesterton or its Board of Police Commissioners.

"That at the time of the above described actions, on the part of the Defendant there existed in full force and effect

certain rules and regulations of the Chesterton Police Department adopted by the Board of Police Commissioners which said rules and regulations provided in part as follows, to-wit:

"PROCEDURE FOR DISCIPLINARY ACTION—

The Chief or any member of the Board may, upon his own motion or upon written complaint received from any person, prefer formal charges against any Officer of the Department for violation of any of the Rules and Regulations of the Department adopted for the operation of the Department by the Board, or a violation of any General or Special orders of the Department issued by the Board or Chief.

"Such charge shall be in writing and shall be filed with the board. Upon the filing of such charges, the Board shall set a date, time and place for a hearing thereon and shall cause a copy of such charges and a written notice of the date, time, and place of the hearing thereon to be served personally or by certified mail return receipt requested upon the Officer so charged. The date of the hearing shall, in no event be prior to 10 calendar by no later than 15 calendar days following the service of such notice to the Officer.

"An Officer so charged and notified of a hearing may appear at such hearing and be heard personally or through counsel, and may request witnesses to be called in his behalf.

"The decision of the Board upon such charges shall be certified to the Chief and be forthwith enforced by him. "In the event of dismissal, the Officer shall surrender any property belonging to the Town, which is in his possession.

"Such procedures shall conform to the provisions of Burn's Sec. 48-6105 and any subsequent methods or procedures provided by such act or subsequent act of the State of Indiana except that such procedures contained herein shall not apply to a probationary officer as defined on Page 3.

"That the Plaintiff herein was guilty of no misconduct while acting as a Police Officer for the Town of Chesterton or at any other time and the action of the Board of Police Commissioners for the Town of Chesterton in summarily discharging him as a Police Officer with the alleged advantegeous alternative of executing a resignation in the

midst of a Star Chamber session was arbitrary, capricious, fraudulent and unlawful."

On March 19, 1969, the Appellee filed motion to dismiss in the trial court, the essential allegations of which are:

"That defendant assumes and believes, and upon such assumption and beliefs states the fact to be, that Plaintiff has brought suit against the Town of Chesterton under the provisions of Burns Indiana Statute 48-6105.

"That plaintiff has failed to comply with that portion of Burns Indiana Statute 48-6105 which requires that the complaint be verified.

"That plaintiff has failed to comply with that portion of Burns Indiana Statute 48-6105 which requires the filing of a bond at the time of the filing of the complaint.

"That plaintiff has failed to comply with that portion of Burns Indiana State 48-6105 which requires that the complaint state in a concise manner the general nature of the charges, the decision of the board, and a demand for the release asserted by plaintiff."

Since the motion to dismiss Appellant's complaint was filed prior to January 1, 1970, the rules of procedure in effect at that time should govern a determination of whether Appellant's complaint was sufficient to withstand a motion to dismiss.

In *Buskirk* v. *Board of Zoning Appeals of the City of Warsaw*, 145 Ind. App. 31, 248 N. E. 2d 386, page 389 (1969), this Court stated in regard to such motions to dismiss:

"The standard to guide the trial court in ruling on such motions is well stated by Judge Arterburn in State ex rel. Calumet National Bank of Hammond v. McCord, 243 Ind. 626, 628, 189 N. E. 2d 583, 584 (1963):

'At the outset, we observe that a motion to dismiss is not normally the proper procedural method of testing the sufficiency of a complaint, nor for considering whether or not the plaintiff has stated a good cause of action. *A demurrer is the method by which such legal questions are raised. A motion to dismiss should not be perverted for that purpose.* The sustaining of a demurrer gives the plaintiff an opportunity to amend, while the sus-

taining of a motion to dismiss cuts off such rights which the statute would normally give a plaintiff. State ex rel. Terminix Co. of Indiana v. Fulton Circuit Court (1956), 235 Ind. 218, 132 N. E. 2d 707; Michener et al. v. Springfield Engine & Thresher Co. et al. (1895), 142 Ind. 130, 40 N. E. 679, 31 L. R. A. 59; Kaplan v. State ex rel. Meyer's Plumbing, Inc. (1960), 241 Ind. 147, 164 N. E. 2d 645; Yelton v. Plantz (1948), 226 Ind. 155, 77 N. E. 2d 895; State ex rel. Hurd v. Davis (1949), 227 Ind. 93, 84 N. E. 2d 181.

'It is stated in all the cases above that a court may not enter an order of involuntary non-suit or dismissal against a plaintiff except where there be a statutory ground or a total lack of jurisdiction.' (our emphasis)

Our Supreme Court in *Yelton* v. *Plantz,* 226 Ind. 155, 77 N. E. 2d 895 (1948) stated:

"We agree that the striking of a complaint, or the dismissing of a cause of action, might be harmless to the plaintiff if it *appears upon the face of the complaint that no amendment is possible which could make the complaint state a cause of action.* But this rule should be applied with caution and only when it is clear that no amendment could be made to make the complaint good." (our emphasis)

We must, therefore, determine whether the Appellant's complaint on its face stated a cause of action or could be amended to state a cause of action. As indicated below, the answer to the question must be in the affirmative.

The statute here involved is found in Ind. Ann. Stat. § 48-6105 (Burns 1971), IC 1971, 18-1-11-3. The first two sentences of the statute are revealing of its legislative purpose. They state:

"Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are *removed* by said board. They may be *removed* for any cause other than politics after written notice is served upon such member in person or by copy left at his last and usual place of resi-

dence notifying him or her of the time and place of hearing, after an opportunity for hearing is given, if demanded, and the written reasons for such removal shall be entered in the records of such board." (our emphasis)

The legislative purpose of this statute was well stated by Judge Cooper, speaking for this Court in *Tryon* v. *City of Terre Haute*, 136 Ind. App. 125, 193 N. E. 2d 377 (1963), at page 131 as follows:

"In reviewing the applicable statutes, it is apparent the legislature intended to protect our policemen and firemen by tenure by enacting a special statute. See § 48-6105, Burns' Ind. Stat. Our courts have repeatedly held in interpreting such statutes that it was the intention of the legislature that policemen hold their positions during good behaviour and satisfactory performance of their duties. See *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 180 N. E. 596; *Roth* v. *State ex rel.* (1902), 158 Ind. 242, 63 N. E. 460; *Shira* v. *State ex rel.* (1918), 187 Ind. 441, 119 N. E. 833.

"We find the general rule well stated in the case of *State ex rel. Felthoff* v. *Richards, supra,* at 641, wherein our Supreme Court stated:

'The General Assembly has recognized the sound public policy of retaining in the public service policemen and firemen who have become increasingly valuable by reason of their experience and has, by statute, assured these public servants an indefinite tenure of position during good behaviour and satisfactory performance of their duties. In order to protect this tenure of position, the General Assembly has provided for a hearing on proper notice for a policeman or fireman under charges. *The hearing required by law is a fair hearing, one conducted in good faith and dominated solely by a desire to determine the fitness of the person under charges. Further, the notice must apprise the accused of the acts of dereliction or personal defects which constitute the "cause." The purpose of the notice is not merely to inform of the time and place of the proposed hearing, but also to disclose the particular act or acts of delinquency or the particular defect constituting incompetency. If the relator was dismissed without "cause" or if he was dismissed without a fair hearing, then his dismissal was illegal;* . . .' (our emphasis)

"In a well-reasoned opinion, our Supreme Court has held that the applicable statutes are both remedial and penal and are in the nature of a civil action. See *City of Fort Wayne* v. *Bishop* (1950) 228 Ind. 304, 92 N. E. 2d 544. "The statutes being penal and remedial, it is fundamental that the charges preferred in such case must be full, clear, complete and concise in order that he can properly make a defense to said charges. General averments, such as we find in this cause, are not, in our opinion, sufficient. The law required more than a mere formality in averring the charges or in the hearing before the board.

"In the recent case of *City of Washington* v. *Boger* (1961), 132 Ind. App. 192, at 204-205, 176 N. E. 2d 484, this court stated:

'It is only within the dictates of fairness and justice that a fireman or policeman, whose livelihood and reputation are at stake because of charges preferred against him should know with clearness and certainty what he is charged with so that he can make his defense with knowledge and ability. Any charge must contain the essential facts and not conclusions. This requirement is more than a technicality; it is fundamental.'

"It requries specific averments as to the reasons assigned for the dismissal and a fair hearing of said charges. See Coleman v. City of Gary (1942), 220 Ind. 446, 44 N. E. 2d 101, and cases heretofore cited." For a recent interpretation of this same statute see *Coats* v. *City of Evansville,* 149 Ind. App. 518, 273 N. E. 2d 862 (1971).

The plaintiff's complaint is sufficient to permit him to prove that he was "removed" within the meaning of Ind. Ann. Stat. § 48-6105. Of course, the Appellant has the burden of proof and persuasion in regard to the allegations of his complaint. If he can sustain these burdens and prove the facts alleged in his complaint, such would be a "removal" within the meaning of the statute. Whether or not the removal was justified will have to be determined in compliance with the provisions of Ind. Ann. Stat. § 48-6105.

This case is, therefore, reversed and remanded for all other proceedings consistent with this opinion.

Hoffman, C.J., Staton, J., concur.

## ON PETITION FOR REHEARING

SHARP, J.—We deny rehearing but deem it necessary in this case to clarify our position and to affirmatively treat certain issues that were only impliedly covered in the previous opinion. The basic question raised by Appellee is whether the Plaintiff-Appellant was required to perfect his appeal to the circuit court as provided by IC 1971, 18-1-11-3, Ind. Stat. Ann. § 48-6105 (Burns 1963). If so, then the Motion to Dismiss was the proper vehicle by which to test any procedural defects. Secondarily, there is the question of whether the trial court had absolute discretion to deny late filing of a security bond and verification.

First of all, in our original opinion we held that Plaintiff-Appellant's complaint stated a good cause of action and that under the old rules the motion to dismiss was not the proper method to test the sufficiency of said complaint. By so holding we impliedly held that the complaint was outside the scope of the statute and we now make said holding explicit.

Appellee strongly urges that the case of *State ex rel. Weaver* v. *Paxson,* 213 Ind. 128, 11 N. E. 2d 677 (1937) is applicable. That case is distinguishable in that it involved an affirmative decision by the board. The Supreme Court, at page 132, stated:

". . . the fact remains that there was a judgment rendered by the board and the only way to obviate its effect was by an appeal to the circuit or superior court of the county, as provided in said section 48-6105."

But here the board did not have to render any affirmative judgment as, if the allegations of the complaint are true, it forced appellant to resign in lieu of being dismissed. IC 1971, 18-1-13-3 employs the following language:

"Any member of such fire or police force who is *dismissed* from such force, as aforesaid, shall have the right to appeal . . . from such *decision of dismissal.*" (our emphasis)

The statute clearly envisioned that the procedural steps outlined therein would be followed, both by the board and by any individual appealing a decision of said board. If the allegations are true, the board completely subverted, not only the procedural steps of the statute, but its underlying policy as well. The board is now attempting to argue that even if such is the case the appellant is still bound by the procedure of the statute.

In regard to a similar factual situation, this court in *Mills; Castor* v. *City of Winchester* (1959), 130 Ind. App. 397, 407, 162 N. E. 2d 97, stated:

"It affirmatively appears from the record before us that the Board of Public Works and Safety, completely disregarding the statute under which it was acting, had a quasi star chamber session in the absence of the appellants—without notice—without having a sufficient written charge against the appellants duly entered upon its record, heard evidence and then adjudged the appellants guilty of offenses of which they had no notice or had not been charged, under the guise of reducing the membership of said Fire Department. We certainly could not, as a matter of law, condone such a practice.

"In a situation such as this, neither this court nor the trial court, should have been concerned as to any evidence introduced at the hearing before the Board of Public Works and Safety on January 14, 1956, which was a hearing requested by the appellants for the reason that the whole proceeding was void ab initio and necessarily contrary to law.

"So far as this court is concerned, the illegality can only be removed by a hearing de novo by the Board of Public Works and Safety of the City of Winchester after proper charges have been preferred and spread of record, and after a reasonable and proper notice to the appellants given, as provided by law."

See also *City of Fort Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 544.

Since there is no official affirmative decision of the board and since coercive action would be void ab initio and contrary

to law, Plaintiff-Appellant is not bound by the procedural steps of IC 1971, 18-1-11-3 and the motion to dismiss was improperly granted.

Because of the above decision we do not at this time need to reach the question of whether the trial court had absolute discretion to refuse to permit late filing of security bond and verification.

Appellee's Petition for Rehearing having failed to convince this court that our decision was erroneous is accordingly denied.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported in 278 N. E. 2d 302.