**Mike WOLFF and Carol Anderson,
Appellants–Plaintiffs,**

v.

**MOORESVILLE PLAN COMMISSION,
Appellee–Defendant.**

No. 55A01–0011–CV–387.

Court of Appeals of Indiana.

Aug. 29, 2001.

C. Duane O'Neal, Lewis & Kappes, P.C., Indianapolis, IN, Attorney for Appellants.

Rodric C. Bray, Harris & Currens, Mooresville, Frank W. Hogan Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Mike Wolff and Carol Anderson ("Wolff") appeal the Mooresville Plan Commission's ("Commission") denial of a petition for primary plat approval to develop a subdivision of manufactured housing. Wolff raises four issues, which we restate as:

I. Whether the Commission's decision to deny approval of Wolff's primary plat was based upon an ordinance that is not valid, and is therefore unlawful, arbitrary, and capricious; and

II. Whether there was sufficient evidence to support the Commission's denial of Wolff's petition for primary plat approval.

We affirm.

### Facts and Procedural History

Wolff owns 174 acres near Mooresville, Indiana. The acres are within the territorial authority of the Commission. On February 12, 1999, Wolff filed a petition for approval of a preliminary primary plat with the Commission. The petition sought preliminary primary plat approval for a single-family residential subdivision of approximately 278 lots. The property is zoned R–1(a), which is defined as a low-density residential "single family dwelling district." R. at 778.

Wolff appeared before the Commission on April 22, 1999. At the hearing, Brad Yarger, a professional engineer with sixteen years of experience specializing in transportation engineering, testified that the single entrance planned to the subdivision was insufficient and that the entrance was poorly designed. Also during the hearing, several individuals who own property adjoining the proposed subdivision ("landowners") voiced concerns including the increased flow of traffic and the lack of adequate buffer zones between their property and the subdivision. One landowner was specifically concerned about increased drainage from the sewage treatment plant serving the proposed subdivision draining directly through his property. After considering this evidence, the Commission denied Wolff's petition, stating that there was insufficient access to the property because the development provided for only one entry and exit.

Subsequent to the denial, Wolff acquired a commitment for additional real estate to add a second entrance and exit. An amended primary plat was submitted on August 12, 1999, and considered by the Commission on August 26, 1999. At the August meeting, the topography of the proposed subdivision was discussed. The area was described as rolling and "ravined." R. at 603. The property was also described as having "some slightly severe topography." R. at 591. The issue of increased drainage from the sewage treatment plant was discussed as well. The Commission continued the meeting so Wolff's attorney could establish "who has the control of the discharge water from the proposed sewage treatment plant." R. at 629.

A final hearing on Wolff's petition was held on October 28, 1999, and Wolff submitted another revised primary plat to decrease the number of lots from 278 total lots in the subdivision to eighty-five to be built in two phases. The plat was revised primarily to address the Commission's concerns about the capacity of the sewage treatment plant and the increased drainage. The sewage capacity issue was discussed as well as the discharge from the sewage treatment plant, and Wolff advised that exclusive jurisdiction of those issues rested with the Indiana Department of Environmental Management ("IDEM"). Adjacent landowners' concerns regarding the buffer between the subdivision and the adjacent property and the condition of public roadways leading to the entrance of the proposed subdivision were also discussed. Thereafter, the Commission denied Wolff's petition and entered the following findings of fact:

The Plat as filed has failed to address issues concerning the treatment of sanitary waste in a sufficient manner to guarantee that there is a capacity to serve the proposed number of homes on the initial Plat, they have failed to provide sufficient information on drainage issues relating to the topography of the

ground; health and safety issues concerning roadways and entryways due to topography. From the evidence heard and presented this Plat is not suitable as presented due to the topography problems, roadway problems and healthy and safety issues concerning sewer and water. This includes problems with access, sight distances and County approval of the access.

R. at 287.

On November 23, 1999, Wolff filed a Petition for Writ of Certiorari, Declaratory Judgment, and Writ of Mandamus in Morgan Superior Court requesting that the court issue a writ of mandamus directing the Commission to approve Wolff's primary plat. The landowners intervened. The trial court denied the petition and found that there was sufficient evidence to support the Commission's decision to deny approval of the plat. This appeal ensued.

### Standard of Review

■■■■ "When an aggrieved party seeks relief in a trial court from an adverse administrative determination and attacks the evidentiary support of the board's findings, he bears the burden of demonstrating that the board's conclusions are 'clearly erroneous.'" *Town of Beverly Shores v. Bagnall*, 590 N.E.2d 1059, 1061 (Ind.1992) (citing *Stewart v. Fort Wayne Cmty. Schs.*, 564 N.E.2d 274 (Ind.1990)). We will reverse the Commission's decision only if the evidence, viewed as a whole, demonstrates that the Commission's conclusions are clearly erroneous. *Id.* The reviewing court gives the Commission's decision great deference when the findings of fact or the application of the facts to the law are challenged. *Id.* On the other hand, if the party alleges that the Commission committed an error of law, such deference is not afforded and reversal is appropriate if an error of law is demonstrated. *Id.*

■■■■ We presume that the Commission's decision was correct and it will not be overturned unless it is arbitrary, capricious, or an abuse of discretion. *Cundiff v. Schmitt Dev. Co.*, 649 N.E.2d 1063, 1066 (Ind.Ct.App.1995). The Commission's decision will be sustained if it was correct on any grounds stated for disapproval of the petition. *Id.*

### I. Validity of the Ordinance

■■■■ Wolff argues that the Commission's decision to deny approval of his primary plat was unlawful, arbitrary, and capricious because it considered matters not based upon "concrete standards." Specifically, Wolff claims that denial of the preliminary primary plat due to "poor standard of design for public safety and welfare" is improper. Brief of Appellant at 19. This statement was made by one of the Commission members at the April 22, 1999 hearing at which Wolff's first petition was denied. The denial of the preliminary plat is a final decision and may be appealed as provided by Indiana Code section 36–7–4–1016. *See Johnson County Plan Comm'n v. RamsHead Corp.*, 463 N.E.2d 295, 300 (Ind.Ct.App.1984). Wolff did not timely appeal the Commission's denial of the first primary plat; therefore, any argument he makes to our court based on the denial made at the April hearing is waived.

Wolff also argues that the Commission's reliance on section 3(A)(1) of the Mooresville Subdivision Control Ordinance ("ordinance"), "presents no 'concrete standards'" that would provide Wolff with notice of the standards required for approval. Brief of Appellant at 20. Section 3(A)(1) provides in part:

> [N]o land shall be subdivided for residential use unless adequate access to the land over improved streets or thoroughfares exists or will be provided by the

subdivider, or if such land is considered by the commission to be unsuitable for such use by reason of flooding or improper drainage, objectionable earth and rock formation, topography, or any other feature harmful to the health and safety of possible residents and the community as a whole.

■■■ To be valid, an ordinance must be "precise, definite, and certain in expression." *Burrell v. Lake County Plan Comm'n,* 624 N.E.2d 526, 529 (Ind.Ct.App. 1993), *trans. denied* (quoting *Carpenter v. Whitley County Plan Comm'n,* 174 Ind. App. 412, 419, 367 N.E.2d 1156, 1161 (1977)). We will not construe an ordinance so as to defeat its purpose "if it is sufficiently definite to be understood with reasonable certainty." *Id.* Ordinances should be interpreted so as to uphold their validity whenever possible. *Id.* "A standard must be written with sufficient precision to give fair warning as to what the Commission will consider in making its decision." *Id.* at 531 (quoting *Tippecanoe County Area Plan Comm'n v. Sheffield Developers, Inc.,* 181 Ind.App. 586, 394 N.E.2d 176, 185 (1979), *trans. denied.*)

Our court discussed a similar ordinance in *Burrell.* That ordinance provided:

No land shall be subdivided which is unsuitable for subdivision by reason of flooding, collection of ground water, bad drainage, adverse earth or rock formation or topography, or any feature likely to be harmful to the health, safety, or welfare of the future residents of the subdivision or of the community. Such lands shall not be considered for subdivision until such time as the conditions causing the unsuitability are corrected.

*Id.* at 530. We held that the ordinance was not vague and provided ample notice to landowners of those conditions that would be evaluated by the Commission when reviewing an application for preliminary subdivision plan approval. *Id.*

■■■ Here, the ordinance lists several items that will be considered by the Commission when it decides whether to approve or deny a preliminary plat. Like the ordinance in *Burrell,* we believe that this ordinance gives sufficient notice of what the Commission will consider when reviewing an application for preliminary subdivision plat approval. Therefore, the ordinance is valid and the Commission may rely upon it to deny a petition for primary plat approval as it did in this case. The Commission's decision to deny approval of Wolff's primary plat was not unlawful, arbitrary, or capricious.

## II. Sufficiency of the Evidence

■■■ Wolff also argues that the Commission's findings of fact are not supported by sufficient evidence. The Commission held three hearings concerning Wolff's primary plat petition. At the April hearing, Engineer Brad Yarger testified concerning proposed roadways for the subdivision and concluded that the preliminary primary plat violated the ordinance [1] for the following reasons: 1) the existence of a five lane intersection; 2) a fifty to sixty foot "jog" in the road near an intersection; and 3) sight distance problems. Yarger concluded that these problems create health and safety concerns as they relate to traffic and access for emergency vehicles. Also, Yarger believed that one entrance and exit to the subdivision was insufficient. Wolff's revised primary plat created a second en-

**1.** Section 4(B)(1) of the ordinance provides: "[t]he streets shall provide access to all lots and parcels of land within the subdivision, and where streets cross other streets, jogs shall not be created." Section 4(B)(10) states, "[i]ntersections of more than two streets at one point shall be avoided."

trance, but that was the only change made to the roadways. At the October hearing, Yarger's April testimony was discussed and it was noted that other problems he had identified in April were not addressed in the revised plat.

Evidence was also presented at the October hearing that the effluent from the sewage treatment facility would drain directly over an adjoining landowner's property. Wolff's representative stated that there was no plan to remedy that situation and that concerns over discharge from the sewage treatment plant were within the exclusive jurisdiction of IDEM. Additionally, evidence was presented regarding the severe topography of the area. Section 3(A)(1) of the ordinance set forth above puts the subdivider on notice that the Commission will take into account the topography of the area. The ordinance also states that the subdivider's plan shall consider issues of sanitation and drainage. *See* Mooresville Subdivision Control Ordinance § 3(A)(1) (1993).

Wolff argues that he provided evidence to the Commission that his plat complied with the requirements of the ordinance. Specifically, he argues that Ross Holloway, Wolff's engineer, testified that the primary plat contained no design deficiencies and complied with the ordinance, and the driveway inspection report by the Morgan County Engineer stated that there were good sight distances.

■ Wolff's argument in this regard merely invites this Court to reweigh the evidence heard by the Commission. In an administrative proceeding involving technical or scientific evidence, we will not determine the credibility or weight to be given to technical evidence such as that discussed above. *See Burrell v. Lake County Plan Comm'n,* 624 N.E.2d 526, 534–35 (Ind.Ct.App.1993), *trans. denied.* Our role is to determine whether the evidence before the Commission taken as a whole provides a reasonable evidentiary basis for its decision. *Id.* at 535.

■ As set forth above, competent evidence was presented to the Commission that Wolff's primary plat was in violation of sections of the ordinance concerning streets and thoroughfares. Competent evidence was also presented concerning the severe topography of the area and drainage problems that would affect the health and safety of the community. We conclude that the Commission was presented with substantial evidence that Wolff's primary plat did not fully comply with the ordinance and that health and safety issues exist that the primary plat did not adequately address. The Commission's decision to deny Wolff's petition was not clearly erroneous.[2]

We affirm.

BAILEY, J., and BAKER, J., concur.

---

**2.** Wolff also argues that the Commission was required to approve his primary plat because the plat complied with all standards of the subdivision control ordinance. Approval of a plat, which meets all requirements of the applicable ordinance, is a ministerial, not discretionary act. *See Cundiff v. Schmitt Dev. Co.,* 649 N.E.2d 1063, 1069 (Ind.Ct.App. 1995). Because we hold that there was sufficient evidence that the primary plat did not meet all the requirements of the ordinance, Wolff's argument fails.